No. 4622.

THE STATE OF LOUISIANA *v.* DIDIO BAPTISTE AND FRANCIS MARTINI.

The judge *a quo* was right when he refused a continuance in order that the prisoners might obtain testimony from Europe to establish the fact that the man alleged to have been murdered was the nephew of one of the accused. The relationship of the parties has nothing to do with the guilt or innocence of the accused..

The judge did not err when he ordered that the witnesses for the State and the prisoners be separated, except the physicians. Dr. Jackson, being the coroner, was called to testify as such; Dr. Bemiss and Dr. Beard, being required as medical experts as to the cause of death were permitted to remain to hear the evidence in order that they might form an opinion as to the cause of death.

The court *a qua* did not err in permitting Ward to testify as a witness. The objection was that he had been found guilty of two crimes, and had been sentenced to the penitentiary and to the parish prison; that he had been pardoned after his sentence had been completed; and that his pardon was not sufficiently proved.

State of Louisiana v. Baptiste and Martini.

It matters not whether the pardon came before or after the term of confinement had expired. There are disabilities which are the consequences of conviction, and which remain after incarceration has ceased. The doctrine well recognized on this subject is, that a pardon gives to the person to whom it is granted a new character, and makes of him a new man. When extended to him in prison, it releases him and removes his disabilities; when given to him after his time of imprisonment has expired, it removes all that is left of the consequences of conviction—his disabilities.

A communication from the Secretary of the Senate to the Acting Governor, informing him that his recommendation for pardon had been received, and that it had been acted upon favorably, is sufficient evidence of the completeness of the pardon.

The judge a quo did not err in permitting the physicians, as professional experts, to recapitulate to the jury the evidence they had heard, and which constituted the reason and foundation for their opinions in relation to the mode of death of the deceased.

The objection that they were physicians in the employ of two insurance offices which had each a policy in the life of the deceased, may go to their credibility, but does not make improper their answers to the questions propounded.

The jury, after being two days and two nights deliberating on their verdict, came into court, and through their foreman asked the court for further instructions as to the weight to be given to circumstantial evidence; and the court having briefly charged the jury that they were bound to act on circumstantial evidence as much as on any other evidence, and being about to send back the jury to their room for further deliberations, the counsel for defendants asked the court to give the jury a more explicit charge as to the character of the circumstantial evidence which was entitled to consideration by them. The court interrupted the counsel, and absolutely refused to hear what he had to say, or even to permit him to address the court upon the right of asking for additional charges on the particular information wanted by the jury.

On this point, it is obvious that the judge a quo erred, and that he refused to the prisoners a most important, and, in this instance, vital right.

APPEAL from the First District Court, parish of Orleans. *Abell*, J. Criminal case. *A. P. Field*, Attorney General, for the State. *Sambola & Atocha*, for defendants and appellants.

LUDELING, C. J. In this case there are several bills of exceptions to the rulings of the judge a quo.

It will be necessary to notice only one of them. The State offered as a witness one Ward, to prove admissions made by the prisoners. Objection was made to permitting the witness to testify, on the ground that he was disqualified by law from testifying, having been convicted of an infamous crime. A pardon of the Acting Governor, P. B. S. Pinchback, was produced. It was granted after the convict had served out the term of his imprisonment, and it is denied that in such a case the Governor had the right to grant a pardon. Such is our opinon. The Governor may pardon a convict while some portion of the penalty after judgment is unsatisfied, but when the judgment has been satisfied there is nothing to pardon. By a rule of evidence one convicted of an infamous crime is disqualified from giving evidence in a court of justice, and we know of no law which authorizes the Governor to remove the disability except by a pardon legally granted. It is from the penalty inflicted by the judgment of the court that the Governor can pardon, and not from the consequences of a civil rule resulting from a former conviction. As well might it be claimed that the Governor could grant indulgences in advance of the commission of crimes.

The judge erred in permitting the witness to testify. It is therefore ordered and adjudged that the verdict of the jury and the judgment of the court be set aside, and that there be judgment remanding the case for a new trial, according to law.

### On Rehearing.

Morgan, J. The defendants, prosecuted for murder, found guilty without capital punishment, and condemned to imprisonment at hard labor for life, have appealed from the sentence pronounced upon them, and present several grounds for a reversal of the decree rendered against them. These errors are assigned in the bills of exceptions, which come up with the record, and which we proceed to .examine in the order in which we find them stated in their counsel's brief.

*First*—It is contended that there was error in the ruling of the district judge, who refused a continuance in order that the prisoners might obtain testimony from Europe, to establish the fact that the man alleged to have been murdered was the nephew of Martini. The judge was right. The relationship of the parties had nothing to do with the guilt or innocence of the accused. Whether the deceased was or was not the nephew of the prisoners, the killing, if unlawful and malicious, was murder.

*Second*—The court ordered that the witnesses for the State and the prisoners be separated, except the physicians. To this exception with regard to the physicians counsel for prisoners objected, and reserved their bill to the ruling of the court. The judge did not err, and the reasons given by him in support of his ruling are satisfactory. "Dr. Jackson," he says, "being the Coroner, was called to testify as such. Dr. Bemiss and Dr. Beard, being required as medical experts as to the cause of death, were permitted to remain to hear the evidence, in order that they might form an opinion as to the cause of death."

*Third*—The court did not err in permitting Ward, a witness, to testify. He had been convicted of two crimes, and had been sentenced to the penitentiary and to the parish prison. The first objection to him as a witness was that he had been pardoned after his sentence had been completed; the second that the pardon which he produced was not sufficiently proved. With regard to one crime, he was undergoing punishment when the pardon was granted to him. With regard to the other we think it matters not whether the pardon came before or after his term of confinement had expired. Imprisonment and hard labor are not the only punishments which the law inflicts upon those who violate its commands. Besides these, are disabilities which are the consequences of conviction, and which remain after incarceration has.ceased. A pardon is supposed to be granted to one who has been

improperly convicted, or who has sufficiently expiated his offense. If it was only efficacious when the party was in duress, its effects would only be a halfway relief. The doctrine, now well recognized upon this subject, we believe, is that a pardon gives to the person in whose favor it is granted a new character and makes of him a new man. When extended to him in prison, it relieves him and removes his disabilities; when given to him after his term of imprisonment has expired, it removes all that is left of the consequences of conviction—his disabilities.

· We think the evidence of his pardon established. He produced it in court. The prisoners contend that the pardon· was only completed by the action of the Senate thereon, and that the action of the Senate has not been properly shown. We think it has. In the record we find a communication from the Secretary of the Senate to the acting Governor, informing him that his recommendation for pardon of the· man Ward, had been received and that it had been acted upon promptly. This we consider sufficient.

*Fourth*—The prisoners' counsel say there was error in the ruling of the judge which permitted the following questions to be propounded to one of the leading physicians examined as an expert :

"Doctor, you were present during the trial, at the examination of the witness for the State, in relation to the fact of this young man, the deceased, going to bathe, and to the appearance, marks of violence, and other facts testified by the witnesses. If you could form any correct opinion as to the cause of the death of this young man, state what is your opinion. State the grounds of your opinion as to the cause of death. Were the bruises on the body of the deceased, according to the representations of the witnesses, inflicted before or after death ?" And to the other physician : "Doctor, you were present at the examination of the witnesses in this trial to testify in reference to the condition of a man found in the lake, on the morning of the twelfth August last, the description of the marks about his neck and breast, and the appearance of his body when found? What is your opinion as a medical man as to the cause of death ?"

Counsel for the prisoners say, in their brief: "The two doctors answered these questions by giving their opinions of the cause of death from the evidence they had heard. They told the jury that it' was their opinion from the evidence they had heard, that the deceased had died from violence; and, as the reason and foundation for their opinion, they recapitulated to the jury the evidence they had heard." It was for the purpose of giving their opinion as to the cause of the death of the deceased that these professional men were put upon the stand. The questions were proper ones; and it was their duty to give·

to the jury the reasons upon which they rested their opinions. It is objected that they were physicians in the employ of two insurance offices who had each a policy on the life of the deceased. This objection went to their credibility, but does not make the questions or their answers improper.

*Fifth*—It was excepted that the jury were not competent to render a verdict, the reason being that the time for which they had been summoned had expired before the verdict was announced. Juries in the First District Court were by monthly terms, beginning the first Monday of each month. The jury in this case were empanneled in the latter part of December. The trial extended over into January. There is no force in this objection. The question has been expressly decided.

The judge did not err in refusing a new trial on the ground that the trial took place only a short time after the indictment was found. The bill was presented on the thirtieth of November, and the trial commenced on the twenty-seventh of December. This gave them ample time to prepare their defense. Doubtless had the time been too short to enable them to do so, the court would have granted them a reasonable extension. Neither did he err in refusing a new trial on the ground that after refusing the prisoners a continuance to enable them to send to Europe for testimony to show that the deceased, whom they were charged with the murder of, was the nephew of one of them, permitted the State to introduce evidence to prove that no relationship existed between them. This evidence seems to have been received without objection—and the motion for a continuance was made before the testimony was offered and received. After the judge had refused the prisoners a continuance in order to enable them to procure evidence of a relationship between the deceased and one of themselves, he would, no doubt, have prohibited the State from proving the contrary, if objections thereto had been made, or if he had admitted it, notwithstanding their objection, he would, on application, have granted them time to produce testimony to the contrary.

So far the rulings of the district judge were correct. But we find in the record the following bill of exceptions:

"Be it remembered, that on the tenth day of January, 1873, the above entitled and numbered cause having been tried and submitted to the jury, and the jury, after being two days and two nights deliberating on their verdict, came into court and, through their foreman, asked the court for further instructions as to the weight to be given to circumstantial evidence; and the court having briefly charged the jury that they were bound to act on circumstantial evidence as much as any other evidence, and being about to return the jury to their room

State of Louisiana v. Baptiste and Martini.

for further deliberation, the counsel for defendant was about to ask the court to give the jury a more explicit charge of the character of the circumstantial evidence which was entitled to consideration by the jury—when the court interrupted the counsel, and absolutely refused to hear what he had to say, or even to address the court upon the right of asking additional charges on the particular information asked by the jury; and to this action and decision of the court the defendants, by their counsel, duly excepted, and the exception was ordered to be made part of the record of the case."

In this it is obvious that the judge erred, and that he refused to the prisoners a most important, and, in this instance, vital right. The record shows that their trial commenced on the twenty-seventh December, and that it continued from day to day (Sundays and the first of January excepted) until the seventh January, when it was submitted to the jury. The jury remained out until the tenth. They then came into court and asked for further instructions as to the weight to be given to circumstantial evidence. A short time after they received the charge of the judge upon this subject, they returned with a verdict of guilty. It is therefore evident, that upon the thread of circumstantial evidence their fate depended. In this condition, it was unquestionably their right, after the court had, as is stated, briefly charged the jury, to require that the whole law upon the subject should have been given to them. For it is apparent that the charge of the judge, as far as it went, might have been correct, and yet, by suppressing an important part thereof, have been fatally and illegally injurious to them.

For instance: If the conrt had charged the jury that they were bound by circumstantial evidence, and had stopped there, the law would have been properly stated. But if the prisoners had requested the judge to add that in an indictment for murder, supported entirely by circumstantial evidence, where there was no fact which, taken alone, amounted to a presumption of guilt, they must find that those circumstances must be such as to be inconsistent with any other rational conclusion than that the prisoners were the guilty persons, before they could find a verdict against them, they would only have asked for instructions which is recognized law. Having refused to even hear their counsel, was an error which he should have corrected on the spot or granted the prisoners a new trial. The reason given by the judge for refusing to hear the counsel, that "the granting of the request of counsel would have been tantamount to a rehearing of the case, as the Attorney General would have had the right to ask counter instructions," is not satisfactory. The Attorney General, as well as the counsel for the prisoners, had the right to ask the judge, when the jury returned into

court, that they be instructed in a particular manner, and either had the right to except to his refusal so to do, as either had the right to except to such charge as he may have made.

Neither do we find his other reason, that "the practice of this court for twenty-five years has been to refuse such applications, and I find no precedents in the books to justify granting the same," conclusive. If it has been the practice in the court over which he presides, for twenty-five years to deny to prisoners on trial before it a right which is accorded to them by law, it is time the practice should be reformed. It is possible that he can "find no precedent in the books for granting the same," but we have not been referred to any where the right has been denied, and we know of none.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be reversed, and that the case be remanded for a new trial in conformity with the principles of law herein laid down.

HOWELL, J., *dissenting.* The bill of exceptions to the refusal of the judge to hear defendant's counsel in asking for "a more explicit charge of the character of the circumstantial evidence, which was entitled to consideration by the jury," does not show what the desired additional charge was, nor in what the charge given was defective, and, therefore, does not enable us to determine whether the request of defendant's counsel should have been granted, even conceding that he was entitled to make the request at the time he desired to make it.

The simple fact that the judge refused to listen to him does not prove that what he wanted should have been granted, nor that the charge given was imperfect or wrong.

I think the defendants are not in a position to obtain any aid from this court.