UNITED STATES ex rel. SCHWARTZ v. COMMANDING OFFICER OF 78TH DIVISION, U. S. A.

(District Court, D. New Jersey. June 3, 1918.)

1. ARMY AND NAVY ⟪⟫20—SELECTIVE DRAFT—DEFERRED CLASSIFICATION—PARDON—EFFECT.

One subject to the Selective Draft Act, who had been fully pardoned after being convicted of a felony, should not be placed in a deferred classification pursuant to section 21 of the original regulations or section 79 of those of November 8, 1917.

2. PARDON ⟪⟫9—FULL PARDON—EFFECT.

A full pardon restores one to all his civil rights, and blots out the existence of guilt.

3. ARMY AND NAVY ⟪⟫20—SELECTIVE DRAFT—DEFERRED CLASSIFICATION—CONDITIONAL PARDON.

Where relator complied with a condition expressed in his pardon it had the same effect as though originally unconditional; hence the conviction was no ground for relator's deferred classification under the Selective Draft Act.

⟪⟫For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

1. ARMY AND NAVY ⟨⟩20—SELECTIVE DRAFT ACT—DECISION OF LOCAL AND DISTRICT BOARDS.

A decision of the local and district boards provided for by the Selective Draft Act, denying a deferred classification to relator, who had been convicted of felony, but pardoned, will not be disturbed by the court on petition for habeas corpus, upon the ground that the pardon was conditional, where there was no showing before the boards that the pardon was other than unconditional; for the pardon having been treated as unconditional, there was evidence upon which the boards' conclusion could be supported.

Habeas Corpus. Petition by the United States, on the relation of Meier Schwartz, for a writ of habeas corpus against the Commanding Officer of the 78th Division, U. S. A., located at Camp Dix, N. J. On petition for the writ, and return of an order to show cause. Order to show cause discharged.

Warren Dixon, of Jersey City, N. J., for relator.

Andrew J. Steelman, Asst. U. S. Atty., of Jersey City, N. J., for respondent.

HAIGHT, District Judge. [1, 2] From the petition, the answering affidavits of the respondent, and certain documents submitted, the following material facts appear, viz.: The relator was inducted into military service on February 24, 1918, pursuant to Selective Draft Act May 18, 1917, c. 15, 40 Stat. 76. Within the prescribed time after being certified as physically fit for military duty, he filed with the proper local board a claim for discharge upon the ground that he had been convicted of a felony, namely, murder, in the state of Mississippi on April 4, 1912, which conviction had not been set aside or reversed. During the course of the board's investigation, it was ascertained, apparently on the relator's admission, that he had been granted a "full pardon by the Governor of the state in which he was convicted, and that since his release he had exercised the right of suffrage as a citizen." The local board disallowed the claim. The relator thereupon prosecuted an appeal to the proper district board, which affirmed the action of the local board. In the questionnaire, which he was subsequently required to file, he again stated that he had been convicted of murder and claimed the right to be classified, in accordance with the regulations, in class 5H. The local board, however, placed him in class 1, and the district board, on appeal, affirmed such classification. Thereafter he was required to report for military duty, and did so. Since February 25, 1918, he has been in the military service.

I have had before me a certified copy of the pardon granted to the relator by the Governor of Mississippi, and a memorandum which was submitted by counsel on behalf of the relator to the district board in support of his original claim for discharge. It is the relator's primary contention that, upon his showing that he had been convicted of felony and sentenced, he should have been discharged under sec-

tion 21 of the original regulations promulgated by the President pursuant to the Selective Draft Act, and that pursuant to section 79 of the regulations promulgated on November 8, 1917, he should have been placed in class 5H, and hence, as since the later regulations were issued only men in class 1 have as yet been drafted in the military service, his detention by the military authorities is unlawful.

It was the relator's contention before the local and district boards on both occasions that, as he had been convicted of murder, he was entitled to a discharge or the deferred classification above mentioned, irrespective of the pardon which had been granted to him. This same contention is made here. I cannot accept that view. It has long been settled that a full pardon removes, not only the crime, but all the legal disabilities flowing therefrom, and, as said by Mr. Justice Field, in Ex parte Garland, 4 Wall. 333, at 380 (18 L. Ed. 366):

"A pardon reaches both the punishment prescribed for the offense and the guilt of the offender; and when the pardon is full it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities, and restores him to all his civil rights; it makes him, as it were, a new man, and gives him a new credit and capacity."

Although the language used in the parts of the regulations above referred to, if literally construed, would undoubtedly support relator's contention, yet, under the settled rules of construction, I think that they must be construed in the light of the law as it then existed, and consequently be held inapplicable to a person who has been convicted of a felony and has subsequently received a pardon, which carries with it the legal consequences above referred to. Any other construction would, I think, be unreasonable, out of harmony with the manifest purposes of the regulations, and contrary to the well-settled rules of construction. As a full pardon restores one to all his civil rights and blots out the existence of guilt, it is inconceivable that it was intended by the regulations that a person who had received a full pardon should be deprived of one of a citizen's greatest privileges, to bear arms in the defense of his country.

[3] However, the pardon which was granted to the relator in this case was upon condition that he should leave the state of Mississippi within three days from the date of the pardon, and should not return thereto. It is next contended that a conditional pardon, such as that, does not have the same effect as a full pardon would. As far as the evidence which is before me shows, the condition has been complied with. Although the rule in some jurisdictions is as the relator contends, it has been decided by the Supreme Court of the United States (which, of course, in a case such as this I am bound to follow) that a pardon granted upon condition blots out the offense, if proof is made of compliance with the condition. Armstrong v. United States, 13 Wall. 154, 155, 20 L. Ed. 614; United States v. Klein, 13 Wall. 128, 142, 147, 20 L. Ed. 519; United States v. Padelford, 9 Wall.

531, 542, 19 L. Ed. 788. In all those cases the pardon was upon condition, and required, on the part of the person pardoned, the continued fulfillment of an oath. I have no doubt, therefore, that, as the relator has complied with the condition upon which the pardon was granted, it has the same effect as if it had been unconditional in the first instance.

[4] Moreover, there was nothing before either the local board or the district board to show that the pardon in this case was any other than a full and unconditional one. In fact, the written argument made before the district board on behalf of the relator made no distinction between conditional and unconditional pardons, but proceeded on the broad ground that the relator's mere conviction entitled him to a discharge or deferred classification, irrespective of the pardon. Hence, whatever may be the legal effect of the particular pardon granted in this case, as there was evidence upon which the boards' conclusions can be supported, namely, proof of a full pardon, this court is not permitted to disturb their judgment. United States v. Kinkead (D. C. N. J.) 248 Fed. 141, affirmed by the Circuit Court of Appeals, 3d Circuit, 250 Fed. 692, —— C. C. A. ——. No question is raised in this case that the relator did not have a fair hearing, in the sense that every opportunity was afforded him to present evidence in support of his claim.

It follows, therefore, that a writ of habeas corpus should not issue, and that the rule to show cause, heretofore granted, should be discharged.