CHARLES W. PAGE v. F. M. WATSON and STATE BOARD OF MEDICAL EXAMINERS.

192 So. 205

En Banc

Opinion Filed June 13, 1938

Rehearing Denied August 2, 1938

Extraordinary Petition for Rehearing Denied Dec. 6, 1939

*J. Velma Keen* and *A. Frank O'Kelley, Jr.,* for Petitioner; *John W. Prunty* and *James N. Daniel,* for Respondents.

CHAPMAN, J.—This is a case of original jurisdiction. On petition for a writ of prohibition, it was made to appear that Charles W. Page was a regularly licensed and practicing physician of the State of Florida prior to November 13, 1929. On November 13, 1929, he was convicted in the Circuit Court of Washington County, Florida, for perjury, possession of stolen goods, and grand larceny, and was by the circuit court of said county sentenced therefor to the State penitentiary of Florida for a period of five years. On March 22, 1933, Charles W. Page was by the Board of Pardons of Florida granted a full and complete pardon of said offenses, *supra.*

The State Board of Medical Examiners of Florida, under Section 3415, C. G. L., took the necessary steps as therein provided to revoke, suspend or annul the license previously granted to Charles W. Page on the ground or grounds that he had been convicted of a felony within the State of Florida and in a court of competent jurisdiction thereof, to-wit: the Circuit Court of Washington County, Florida. It is the contention of counsel for petitioner that the full and complete pardon granted under date of March 22, 1933, by the Board of Pardons of Florida is a full and complete defense to the proceedings before the State Board of Medical Examiners to revoke or annul the petitioner's license. That the legal effect of the pardon is to deprive the State Board of Medical Examiners of all jurisdiction to further hear and determine the case.

The State Board of Medical Examiners filed a demurrer to the said petition and the ground thereof was that the petition for a writ of prohibition failed to set forth a cause of action. The demurrer admits as true the facts set out in the petition. Section 7105, C. G. L., defines a felony as any crime punishable by death, or imprisonment in the State prison, and no other crime shall be so considered. Every other offense is a misdemeanor. Either of the offenses of which Charles W. Page was convicted in the Circuit Court of Washington County was a felony within the meaning of Section 3415, C. G. L., and for which the State Board of Medical Examiners had a legal right to revoke or annul the license previously granted to petitioner. This case was before this Court and reported in State *ex rel.* Page v. Hollingsworth, 117 Fla. 288, 157 So. 887. In the case of State *ex rel.* Tullidge v. Hollingsworth, 108 Fla. 607, text pages 608-9, 146 So. 660, this Court had before it the section of law *supra*, under which the Board of Medical Examiners was proceeding against the petitioner, and said:

"Section 3415 C. G. L. of 1927 provides a full, complete and adequate procedure for suspending or annulling the license of a practitioner of medicine for the reasons stated. In fine, it requires that charges be preferred against the practitioner and that the time and place of hearing them by the State Board of Medical Examiners be determined and announced. It is also required that the accused be served with a copy of the charges against him together with the time and place of hearing at least ten days prior thereto, at which time and place he shall have the right to cross-examine the witnesses against him, to introduce witnesses in his defense and to appear personally or by counsel. Upon satisfactory proof of the charges the Board may by a two-thirds vote suspend him from the practice of medicine and revoke his license. The accused may on *certiorari* have the action of the Board reviewed by the circuit court of the circuit in which his license is recorded or he may demand a trial *de novo* in the circuit court and have his guilt or innocence determined according to law applicable to the charge produced against him. Unless the guilt of the accused shall be made to appear beyond a reasonable doubt, the court shall render its decision in his favor and restore him to full right to practice medicine under the law. Appeal lies from the circuit court to the Supreme Court under like restrictions as those applicable to chancery appeals.

"In this state of the law it cannot be controverted that Chapter 3415, *supra,* requires that the accused be given reasonable opportunity to be heard before the Board of Medical Examiners in his own defense, to confront the witnesses against him, to have witnesses in his own behalf to be represented by counsel and to have his cause reviewed

by both the circuit court and the Supreme Court if he can show grounds for so doing."

Counsel for petitioner in support of their contention that the pardon granted petitioner under date of March 22, 1933, is a complete defense to the revocation or annulment of petitioner's license, cite and emphasize the rule enumerated in *Ex Parte* Garland, 4 Wall. 333, 71 U. S. 366, 18 L. Ed. 366. That suit involved the validity of an Act of Congress requiring, among other things, a certain oath to be taken as a condition of the right of one to appear and be heard as an attorney-at-law by virtue of any previous admission to the bar, that court, referring to certain clauses of the Act relating to past conduct, said: "The statute is directed against parties who have offended in any of the particulars embraced by these clauses. And its object is to exclude them from the profession of the law, or at least from its practice in the courts of the United States. As the oath prescribed cannot be taken by these parties, the Act, as against them, operates as a legislative decree of perpetual exclusion. And exclusion from any of the professions or any of the ordinary vocations of life for past conduct can be regarded in no other light than as punishment for past conduct. The exaction of the oath is the mode provided for ascertaining the parties upon which the Act is intended to operate, and instead of lessening, increases its objectionable character. All enactments of this kind partake of the nature of bills of pains and penalties, and are subject to the constitutional inhibition against the passage of bills of attainder, under which general designation they are included. * * * "

This Court in an advisory opinion to the Governor of Florida under date of September 27, 1872, as reported in 14 Fla. at page 319, said:

"* * * We would respectfully state that 'a pardon reaches both the punishment prescribed for the offense and the guilt

of the offender. When the pardon is full, it remits the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense. If granted before conviction, it prevents any of the penalties and disabilities consequent upon conviction from attaching; if granted after conviction, it removes the penalties and disabilities and restores him to all his civil rights. It makes him, as it were, a new man, and gves him a new credit and capacity. There is only this limitation to its operation; *it does not restore offices forfeited or property or interests vested in others in consequence of the conviction and judgment.'* (*Ex Parte* Garland, 4 Wall. 380.)" (Emphasis supplied.)

In the case of Singleton v. State, 38 Fla. 297, text 302, 21 So. 21, 34 L. R. A. 251, 56 Am. St. Rep. 177, this Court said:

"* * * In this case it is said, in reference to the effect of a pardon, that it 'reaches both the punishment prescribed for the offense, and the guilt of the offender. When the pardon it full, it remits the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense.' This has been approved in an opinion of the Justice of this Court (Advisory Opinion to Governor, 14 Fla. 318). It is settled law that the pardon of an offense not only blots out the crime committed, but removes all disabilities resulting from the conviction. 'Imprisonment and hard labor are not the only punishments which the law inflicts upon those who violate its commands. Besides these, are disabilities which are the consequences of conviction, and which remain after incarceration has ceased. A pardon is supposed to be granted to one who has been improperly convicted, or who has sufficiently expiated his offense. If it was only effica-

cious when the party was in duress, its effects would only be a half-way relief. The doctrine now well recognized upon this subject, is that a pardon gives to the person in whose favor it is granted a new character and makes of him a new man. When extended to him in prison, it relieves him and removes his disabilities; when given to him after his time of imprisonment has expired, it removes all that is left of the consequences of conviction—his disabilities.' State v. Baptiste, 26 La. Ann. 134.."

The modern trend of authorities generally accepted by the courts is that a pardon restores one to the customary civil rights which ordinarily belong to a citizen of the State, which are generally conceded or recognized to be the right to hold office, to vote, to serve on a jury, to be a witness, but it does not restore offices forfeited, nor property or interests vested in others in consequence of conviction.

The effect of a full and absolute pardon as given in 46 C. J., pages 1192-3, par. 32, is, viz.:

"When a full and absolute pardon is granted, it exempts the individual upon which it is bestowed from the punishment which the law inflicts for the crime which he has committed. The crime is forgiven and remitted, and the individual is relieved from all of its legal consequences. The effect of a full pardon is to make the offender a new man. While a pardon has generally been regarded as blotting out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense, it does not so operate for all purposes and as the very essence of a pardon is forgiveness or remission of penalty, a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction thereof; it does not wash out the moral stain; as has been tersely said—it involves forgiveness and not forgetfulness."

In the case of Cummings v. Missouri, 4 Wall. 227, 18 L. Ed. 356, which is in line with the Garland case, *supra,* it was determined that one who is in the enjoyment of a right to preach and teach the Christian religion as a priest of a regular church, and one who has been admitted to practice the profession of law, cannot be deprived of the right to continue in the exercise of these professions by the exaction of an oath as to their past conduct, respecting matters which have no connection with such professions. We have not been able to find a decision by a court of last resort holding· to the effect that a full and complete pardon restores the extraordinary right to practice any of the professions because of public interest. The privilege of pursuing the practice is based on the granting of a license on the part of a sovereign State wherein the State grants the license to those only possessing the necessary integrity and approved moral character.

It cannot be contended here that the Legislature of Florida had not the power to require, as a condition to the right to practice medicine, that the practitioner shall not only be learned in the profession but have in addition thereto the qualifications of honor and good moral character. It cannot be overlooked that the health of a citizen is his greatest asset. It was the will and desire of the Legislature that the life, limb and health of its citizens should not be intrusted to quacks, adventurers and to those of questioned integrity. The doors of our homes should not be opened to receive men who hold themselves out as qualified medical practitioners when in truth and fact they have been convicted of crime and this fact alone throws much light upon the question of character. It is not, as a rule, the good people who commit crime. The Legislature enacted that a practitioner of medicine who had been convicted

of a felony in the courts of Florida may have his license revoked or annulled. The adjudication of his guilt of a felony thereby violating the criminal laws of Florida, rendered the medical practitioner a man of such character as to render it unsafe to trust the lives and the health of the citizens of Florida to his professional care.

In the case of Hawker v. New York, 170 U. S. Rep. 189, 42 L. Ed. 1002, 18 Sup. Ct. Rep. 573, Hawker was indicted in New York City in April, 1896, and the indictment alleged that he had been convicted of the crime of abortion in 1878, and after conviction continued to practice medicine in said county and on February 22, 1896, by then and there treating one Dora Hoenig. The statute under which he was indicted in 1896 was enacted in 1895 prohibiting a physician having been convicted of a crime from practicing medicine, while the first conviction was entered in 1878. He was placed upon trial and convicted for practicing under the subsequently enacted statute, *supra,* and his counsel relied on the authorities of *Ex Parte* Garland, and Cummings v. Missouri, *supra,* when the court in this case stripped each of these cases of "much of their virility" when it, in affirming a conviction in the lower court, said:

" 'There is nothing in these decisions which support the positions for which the plaintiff in error contends. They only determine that one who is in the enjoyment of a right to preach and teach the Christian religion as a priest of a regular church, and one who has been admitted to practice the profession of law, cannot be deprived of the right to continue in the exercise of their respective professions by the exaction from them of an oath as to their past conduct, respecting matters which have no connection with such professions. Between this doctrine and that for which the plaintiff in error contends there is no analogy or re-

semblance. The Constitution of Missouri and the Act of Congress in question in those cases were designed to deprive parties of their right to continue in their professions for past acts or past expressions of desires and sympathies, many of which had no bearing upon their fitness to continue in their professions. The law of West Virginia was intended to secure such skill and learning in the profession of medicine that the community might trust with confidence those receiving a license under authority of the State.'

"*Ex Parte* Wall, 107 U. S. 265, is also worthy of notice. In that case the circuit court has stricken the petitioner's name from the roll of practicing attorneys, on the ground that he had committed a crime, although not in the presence of the court, nor interfering with it in the discharge of its duties. The petitioner here insisted that the act which was charged against him was one for which he was, if guilty, liable to trial and conviction under the law of the State, and that the Federal court had no power on account of such act, one having no connection with his obligations to that court, to disbar him. In reply to this contention it was said, p. 273:

" 'It is laid down in all the books in which the subject is treated, that a court has power to exercise a summary jurisdiction over its attorneys to compel them to act honestly toward their clients, and to punish them by fine and imprisonment for misconduct and contempts, and, in gross cases of misconduct, to strike their names from the roll. If regularly convicted of a felony, an attorney will be struck off the roll, as of course, whatever the felony may be, because he is rendered infamous. If convicted of a misdemeanor which imports fraud or dishonesty, the same course will be taken. He will also be struck off the roll for gross

malpractice or dishonesty in his profession. * * * Where an attorney was convicted of theft, and the crime was condoned by burning in the hand, he was nevertheless struck from the roll. "The question is," said Lord Mansfield, "whether after the conduct of this man, it is proper that he should continue a member of a profession which should stand free from all suspicion. * * * It is not by way of punishment; but the court in such cases exercise their discretion, whether a man whom they have formerly admitted is a proper person to be continued on the roll or not." '

"The thought which runs through these cases, and others of similar import which might be cited, is that such legislation is not to be regarded as a mere imposition of additional penalty, but a prescribing the qualifications for the duties to be discharged and the position to be filled, and naming what is deemed to be and what is in fact appropriate evidence of such qualifications.

"In Gray v. Connecticut, 159 U. S. 74, 77, this Court considered the effect of a statute prescribing additional qualifications for one acting as a pharmacist who already had a license from the State therefor, and said: 'Whatever provisions were prescribed by the law previous to 1890, in the use of spirituous liquors in the medicinal preparations of pharmacists, they did not prevent the subsequent exaction of further conditions which the lawful authority might deem necessary or useful.' See also Foster, v. Police Commissioners, *supra,* and State v. State Board of Medical Examiners, 34 Minnesota 387."

See: Nelson v. Commonwealth, 128 Ky. 779, 109 S. W. 337; State v. Hazard, 139 Wash. 487, 247 Pac. 957, 47 A. L. R. 538; 20 R. C. L., p. 563, par. 49; People *ex rel.* Deneen v. Gilmore, 214 Ill. 569, 73 N. E. 737, 69 L. R. A. 701; 45 A. S. R. note on pages 76-77; People v. Burton, 39 Colo. 164, 88 Pac. 1063, 121 A. S. R. 165.

In the case of State v. Hazard, *supra,* the defendant, Hazard, in 1912 was the holder of a license issued by the State of Washington authorizing her to practice the "art of healing." In that year she was convicted of manslaughter and sentenced to the penitentiary. She was pardoned and the necessary provision thereof was "The Governor of the State of Washington, by virtue of the authority in him vested, does hereby pardon Linda B. Hazard and restore her to all rights and privileges she forfeited by reason of her conviction." After receiving the pardon she again commenced practicing on the theory that the issuance of the pardon automatically restored the license to practice. She relied upon the cases of *Ex Parte* Garland and Cummings v. Missouri, *supra.* The Supreme Court of the State of Washington affirmed a judgment of conviction. It followed the rule of Hawker v. New York, *supra,* which modified the *Ex Parte* Garland case and Cummings v. Missouri. It said, "There is a wide distinction between the right which one, whether felon or free, has to hold his own property against the world, and deny even the State the right to take it from him without compensation therefor, and that other right to practice a profession which demands peculiar qualifications in order to protect the public and requires a license. One qualified in all respects has a right to a license, but one not qualified has no right whatever."

Counsel for respondent cite United States v. Swift, 186 Fed. 1002; Thompson v. United States, 202 Fed. 401; Pierce v. Carskadon, 16 Wall. 234, 83 U. S. 234, 21 L. Ed. 276; Tate v. Baugh, 252 Fed. 316; Illinois Central R. Co. v. Bosworth, 133 U. S. 92, 33 L. Ed. 550, 10 Sup. Ct. Rep. 231; Boyd v. United States, 142 U. S. 450, 35 L. Ed. 1077, 12 Sup. Ct. Rep. 292. An examination shows that each of these cases follow the rule enunciated in *Ex Parte* Garland. We observe the statement of counsel for respondent

as to the rule in Hawker v. New York, *supra*. We think the following portion of the opinion is a complete answer to this comment, viz.: "The thought which runs through these cases, and others of similar import which might be cited, is that such legislation is not to be regarded as mere imposition of additional penalty, but as prescribing the qualifications for the duties to be discharged and the position to be filled and naming that is deemed to be and what is in fact appropriate evidence of such qualifications." Consideration has been given to comments of counsel for respondent as to the rule enunciated in State v. Hazard, *supra*. The decision answers the comment when it says, "One qualified in all respects has a right to a license but one unqualified has no right whatever."

It appears that in *Ex Parte* Garland, and Cummings v. Missouri and cases bottomed thereon, including the Advisory Opinion to the Governor and Singleton v. State, *supra,* and cited here by counsel for respondent, limit punishment for an offense after a pardon has been granted, when the question before this Court is one of qualifications of a person to practice medicine which the Legislature of Florida within the police power of the Constitution had a right to prescribe. The effect of a pardon should not be construed or extended to strike down the statutes of Florida requiring moral qualifications to receive a license to practice medicine in Florida when Section 8495 C. G. L. holds that person receiving a pardon * * * shall be entitled to all the rights of citizenship enjoyed by them prior to conviction. The statute authorizing the Board of Medical Examiners to revoke or annul a license of a practitioner of medicine was enacted by the 1921 session of the Legislature and subsequently amended in 1927.

The rule in Hawker v. New York, and State v. Hazard, *supra,* is in line with the modern trend of authorities and

by its adoption we observe the rule expressed in the Advisory Opinion to the Governor, and Singleton v. State, *supra;* (b) Section 8495 C. G. L.; (c) the modern trend of authorities; (d) it approves Section 3415 prescribing the qualifications of a practitioner of medicine in Florida; (e) it sustains the authority of the Board of Medical Examiners to remove morally unqualified persons to practice medicine. We therefore hold that the pardon granted to Charles W. Page on March 22, 1933, by the Board of Pardons of Florida is no defense to the proceedings filed before the Board of Medical Examiners against Charles W. Page. We express no opinion on the legal sufficiency thereof. It follows that the demurrer to the petition for a writ of prohibition should be and is hereby sustained.

WHITFIELD, TERRELL and BROWN, J. J., concur.

BUFORD, J., dissents.

BUFORD, J. (dissenting).—I cannot concur in the opinion prepared by Mr. Justice CHAPMAN because the record shows that the proceedings before the Board of Medical Examiners was instituted after the effective date of the full and absolute pardon which had the effect stated in 46 C. J. 1192-3, par. 32, quoted in Mr. Justice CHAPMAN's opinion and therefore the conviction is for all purposes of no effect. If the complaint charged that the petitioner *committed* the unlawful acts of which he was convicted it would present a difficult question. Those charges might be sustained by proof but the conviction is no longer evidence of the commission of the acts then charged.

## ON PETITION FOR REHEARING

PER CURIAM.—The opinion contains a statement that "the rule in Hawker v. New York, and State v. Hazard, *supra,* is in line with the modern trend of authorities, and by its adoption we observe the rule expressed in" cited au-

thorities, and "it (the rule) sustains the authority of the Board of Medical Examiners to remove morally unqualified persons to practice medicine." The last quoted words are used abstractly and have reference to the grounds for revoking a license to practice medicine as stated in the previously cited Florida statute, Section 3415 C. G. L., which grounds have relation to "morally unqualified persons."

Section 8495 (6181) C. G. L. provides that persons receiving full pardons from the Board of Pardons shall be entitled to all the rights of citizenship enjoyed by them before their conviction. The *rights of citizenship* do not include a right to practice medicine.

One of the grounds for revoking a license to practice medicine is "that a physician has been convicted in a court of competent jurisdiction of a felony." This contemplates that the conviction is to be after being licensed to practice medicine, if not also before being licensed. In this case the petitioner was convicted after being licensed to practice medicine.

The statute, Section 3415 C. G. L., applies when "a physician has been convicted in a court of competent jurisdiction of a felony" and the opinion shows the petitioner was convicted of a felony, viz.: "for perjury, possession of stolen goods, and grand larceny" which involved moral turpitude and have relation to his qualifications as a practitioner of medicine.

A conviction of a felony does not revoke the license to practice medicine; but it is a predicate for such revocation by the State authority under the statute.

The pardon restored petitioner's rights of citizenship, but it did not restore or affect his qualifications or his character, or exempt him from the enforcement of the statute author-

izing his license to practice medicine to be "revoked, suspended or annulled, or such practitioner reprimanded upon the grounds" stated in the statute.

In the Garland case the oath required as to past conduct had no relation to the qualifications required for practicing the profession of law.

In *Ex Parte* Wall, the circumstances of the practitioner's personal conduct was held to justify the court in striking petitioner's name from the roll of attorneys.

The history of Section 3415, C. G. L. does not indicate a legislative intent "to eliminate entirely the absence of good moral character as a ground for revoking a license to practice medicine." See Chap. 8415, Acts 1921; Chap. 12285, Acts 1927.

In this case the felonies of which petitioner was convicted involved moral turpitude and affect his character and qualities as a practitioner of medicine, even though his rights of citizenship have been restored by a full pardon.

Rehearing denied.

ELLIS, C. J., and WHITFIELD, BROWN and CHAPMAN, J. J., concur.

BUFORD, J., dissents.