In the Matter of Petition for NATURAL-
IZATION OF Frank Joseph
QUINTANA.

Petition No. 17521.

United States District Court
S. D. Florida,
Tampa Division.
March 28, 1962.

LIEB, District Judge.

This is a proceeding relating to a Petition for Naturalization filed by Frank Joseph Quintana. The Immigration and Naturalization Service recommended approval of the petition.

From the report of the Designated Examiner of the Immigration and Naturalization Service, it appears that the petitioner is a native and national of Cuba. He is 66 years of age and has continuously resided in the United States since his lawful admission for permanent residence on June 29, 1906. He was convicted of second degree murder on March 20, 1941, in the Circuit Court of Hillsborough County, Florida, and was sentenced to the Florida State Penitentiary for a period of twenty years for that crime.

On August 28, 1945, the petitioner was released on parole under supervision until March 26, 1961. The Governor of the State of Florida granted the petitioner a full and complete pardon and restored his civil rights on June 13, 1956. The petitioner filed his application for naturalization on July 20, 1961, under the general provisions of the Immigration and Nationality Act.

Under the provisions of § 316(a) of the Immigration Act of 1952 [8 U.S.C.A. § 1427(a)], hereinafter referred to as the Act, a petitioner for naturalization is required to establish, among other matters, good moral character for a period of at least five years prior to the filing of his petition for naturalization and until the date of final hearing thereon.

Section 101 of the Act [8 U.S.C.A. § 1101(f)] provides:

"(f) for the purposes of this chapter—

"No person shall be regarded as, or found to be, a person of good

moral character who, during the period for which good moral character is required to be established, is, or was—

"(1) a habitual drunkard;

"(2) one who *during such period* has committed adultery;

"(3) a member of one or more of the classes of persons, whether excludable or not, described in paragraphs (11), (12), and (31) of section 1182(a) of this title; or paragraphs (9), (10), and (23) of section 1182(a) of this title, if the offense described therein, for which such person was convicted or of which he admits the commission, was committed *during such period;*

"(4) one whose income is derived principally from illegal gambling activities;

"(5) one who has been convicted of two or more gambling offenses committed *during such period;*

"(6) one who has given false testimony for the purpose of obtaining any benefits under this chapter;

"(7) one who *during such period* has been confined, as a result of conviction, to a penal institution for an aggregate period of one hundred and eighty days or more, regardless of whether the offense, or offenses, for which he has been confined were committed within or without such period;

"(8) one who *at any time* has been convicted of the crime of murder.

"The fact that any person is not within any of the foregoing classes shall not preclude a finding that for other reasons such person is or was not of good moral character." (Emphasis supplied.)

Despite the clear differentiation in the section between those persons convicted of murder and those convicted of lesser offenses, petitioner claims, and the examiner agrees with him, that a conviction of the crime of murder is not an absolute bar to citizenship. Petitioner contends that, because he was granted a full and unconditional pardon of the offense more than five years prior to his application for citizenship, and his record during the same five years indicated that he was otherwise a person of good moral character, he is entitled to be naturalized.

Petitioner contends that the effect of the full pardon granted to him was to completely blot out of existence the verdict of guilty so that in the eyes of the law he is considered as innocent as if he had never committed the offense. In support of this proposition, petitioner cites the decisions of the Supreme Court of the United States in Ex parte Garland, 4 Wall. 333, 71 U.S. 333, 18 L.Ed. 366; Carlisle v. United States, 16 Wall. 147, 83 U.S. 147, 21 L.Ed. 426; and Osborn v. United States, 91 U.S. 474, 23 L.Ed. 388. However, none of these cases involved naturalization proceedings or the effect of a pardon with relation to the immigration or naturalization laws.

The modern trend of authorities is away from such a concept of a pardon. The Supreme Court of Florida, the state wherein petitioner's pardon was granted, in its decision in the case of Page v. Watson, 140 Fla. 536, 192 So. 205, 126 A.L.R. 249, decided in 1938, stated its views on this matter as follows:

"While a pardon has generally been regarded as blotting out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense, it does not so operate for all purposes and as the very essence of a pardon is forgiveness or remission of penalty, a pardon implies guilt; it does not obliterate the fact of the commission of the crime and the conviction thereof; it does not wash out the moral stain; as has been tersely said; it involves forgiveness and not forgetfulness."

The petitioner cites no case decided since the passage of the Immigration and Nationality Act of 1952 in which citizenship was actually granted to anyone who had ever been convicted of murder. The nearest he has been able

to approach that point is the unreported case of Petition of Ernest Gerald Ramsay decided by Chief Judge Inch of the Eastern District of New York on November 29, 1955, in which the Court appeared to agree with petitioner's contention but held that the petitioner had not established good moral character as the pardon which he received was not five years old when he applied for citizenship.

Likewise, the Fifth Circuit Court of Appeals decision in Taylor v. United States, 231 F.2d 856, cited by petitioner is not authority for his contention. In that case, Judge Whitehurst of this Court had denied the petition on the ground that a conviction of murder prevented the establishment of the requisite good character despite the full and complete pardon granted to petitioner for that offense by the Governor of Florida. On appeal, the Court of Appeals affirmed the decision and stated:

"We are unable to find fault with the findings and conclusions reached below, and regard the denial of Taylor's petition clearly supported."

It is noted that the petitioner in that case also claimed before the Court of Appeals that under the interpretation of a pardon by the Supreme Court in Ex parte Garland, supra, the pardon removed the bar of the statute in his case. However, in view of the fact that Taylor had obtained his pardon less than five years before the filing of his petition for naturalization, the Court held that he had not established the required good moral character for the required period and it was not necessary to decide whether or not the conviction of murder forever precluded the establishment of good moral character for naturalization despite a subsequent pardon.

To the same effect as Judge Whitehurst's ruling in Taylor are the District Court's decisions of Petition of De Angelis, D.C., 139 F.Supp. 779, Petition of Ferro, D.C., 141 F.Supp. 404, Petition of Salani, D.C., 196 F.Supp. 513 and In re Siacco's Petition, D.C., 184 F.Supp. 803. In all of these cases it was pointed out that naturalization is a matter of grace, not of right. Congress may grant or withhold the privilege upon any ground or without any reason, as it sees fit. Once the conditions are so prescribed, the Courts are without authority to modify or change them. The only question is what was the intent of Congress in enacting Section 101(f) (8) of the Act of 1952. Certainly Congress did not overlook the existence of executive pardons for the crime of murder in enacting the Immigration and Naturalization Act of 1952. In § 241(b) of the same Act [8 U.S.C.A. § 1251(b)] dealing with deportation of aliens, it is provided:

"The provisions of subsection (a) (4) * * * respecting the deportation of an alien convicted of a crime or crimes shall not apply (1) in the case of any alien who has subsequent to such conviction been granted a full and unconditional pardon by the President of the United States or by the Governor of any of the several States, * * *."

Had Congress adopted petitioner's argument that such a pardon should be construed as blotting out the existence of the conviction, it would not have needed to provide such a paragraph.

It is clear that Congress, by specifically declaring that a pardon affected the right to deport an alien, and by failing to mention a pardon at all in § 101(f) (8), meant that pardons have no effect on the right to naturalization. Clearer still is the very language of the section:

"No person shall be regarded as * * * a person of good moral character * * * who at any time has been convicted of the crime of murder." (Emphasis supplied.)

This language was carefully chosen in a very important piece of legislation and undoubtedly means exactly what it says.

Order shall be entered in accordance with the foregoing, declaring that the Petition for Naturalization filed by Frank Joseph Quintana be denied.