HUBBART, Judge.
This is an appeal from a final order of the Florida Department of Health and Rehabilitative Services denying a reapplication for a license to operate a family day care home. The sole basis for rejecting the subject reapplication was that the applicant had been previously convicted of certain felonies relating to drug abuse, and, therefore, was entirely disqualified from receiving such a license under Section 402.-305(l)(a)(26), Florida Statutes (1985). The applicant Eula Mae Calhoun appeals, contending that the above statute is constitutionally invalid. We disagree and affirm.
I
The facts relevant to this appeal are entirely undisputed. On January 31, 1977, the petitioner Eula Mae Calhoun was adjudged guilty, upon her plea of guilty, to the following four felonies, all of which were committed on the same day: (1) unlawful possession of marijuana in an amount greater than five grams, (2) unlawful possession of narcotics paraphernalia, (3) unlawful possession of heroin, and (4) unlawful possession of cocaine, and was placed on one-year probation in the Circuit Court for the Eleventh Judicial Circuit of Florida. Subsequent thereto and with full knowledge of these prior felony convictions, the Florida Department of Health and Rehabilitative Services [hereinafter “HRS”] licensed the petitioner Calhoun to operate a five-child family day care center in her home as part of the James E. Scott Community Association Early Childhood Development Program in Dade County, Florida, for a period of one year beginning in July 1978. HRS further relicensed the petitioner Calhoun to operate the above family day care center for six successive one-year periods from July 1979 through July 1985. During this time, Mrs. Calhoun, without dispute, ran a successful day care center with no complaints or bad reports from anyone. On the contrary, there is evidence in the record that the parents who left their children with Mrs. Calhoun were *676 very satisfied with her services; also, the social workers from the James E. Scott Community Association assigned to supervise Mrs. Calhoun rated Mrs. Calhoun’s work as highly satisfactory.
When Mrs. Calhoun reapplied for a renewal of her day care license for the period July 1985 — July 1986, HRS in a letter dated August 2, 1985, denied the reapplication solely on the basis that she was disqualified from holding such a license by virtue of a newly enacted statute, Section 402.-305(l)(a)(26), Florida Statutes (1985). Mrs. Calhoun protested this decision and requested an informal administrative hearing. On October 25, 1985, such a hearing was held before a specially appointed hearing officer, at which time evidence was received reflecting the above-stated facts. Counsel for HRS conceded at the hearing that Mrs. Calhoun “had a very good record” in operating her child care center for 1978-85 and that the sole basis for rejecting her reapplication was that she was disqualified from holding such a license under the above-stated statute.
On December 13, 1985, the hearing officer agreed entirely with HRS’s position and entered a recommended order which found as follows:
“1. Petitioner, EULA MAE CALHOUN’S, Family Day Care Home reapplication for licensure was denied by HRS on August 2, 1985.
2. HRS’s basis for denial of the Petitioner’s reapplication for license was based upon Chapter 85-54 Section 24, amending 402.305, Florida Statutes.
3. Petitioner commenced operating a family day care home in 1978. Petitioner has successfuly operated her family day care home since she went into business.
4. Petitioner, EULA MAE CALHOUN’S maiden name was EULA MAE SMITH.
5. That the Petitioner has been arrested on August 13, 1976 for:
a. Possession of opium or Deriv.
b. Selling cocaine.
c. Possession of narcotic equipment (HRS Composite Exhibit # 1).
6.The State Attorney's Office information has four (4) counts, namely that:
COUNT I
EULA MAE SMITH on the 13th day of August, 1976, in the County and State aforesaid, did unlawfully and felo-niously have in her actual or constructive possession a controlled substance, to wit: CANNABIS, meaning all parts of the plant cannabis sativa, including all varieties thereof, whether growing or not; the seeds thereof, the resin extraced from any part of the plant; and every compound, manufacture, salt, derivative, mixture or preparation of the plant, its seeds or resin, in an amount greater than five grams, in violation of 893.12 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.
COUNT II
... that EULA MAE SMITH on the 13th day of August, 1976, in the County and State aforesaid, did unlawfully and feloniously possess, have under her control, any device, contrivance, instrument, or paraphernalia to-wit: A STRAINER, with the intent that said device, contrivance, or instrument or paraphernalia be used for unlawfully administering a controlled substance, in violation of 893.13 Florida Statutes, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Florida.
COUNT III
... that, EULA MAE SMITH on the 13th day of August, 1976, in the County and State aforesaid, did unlawfully and feloniously possess with intent to sell, or deliver, a controlled substance, to-wit: HEROIN, in violation of 893.-13(l)(a) Florida Statutes, contrary to the form of the Statute in such cases *677 made and provided, and against the peace and dignity of the State of Florida.
COUNT IV
... that, EULA MAE SMITH on the 18th day of August, 1976, in the County and State aforesaid, did unlawfully and feloniously possess with intent to sell, or deliver, a controlled substance, to-wit: COCAINE, in violation of 893.-13(l)(a) Florida Statutes. (HRS Composite Exhibit # 2)
7. Judge Richard S. Fuller on January 31, 1977, in his Order Judgment of Guilt and Placing Defendant on Probation states:
This cause coming on this day to be heard before me, and you, the defendant EULA MAE SMITH, being now present before me, and you having entered a plea of guilty to the offense of Count I. Unlawful Possesion of Cannabis {Felony) II, Unlawful Possession of Controlled Substance Implement. III. Possession With Intent To Sell or Deliver Heroin. IV. Possession With Intent to Sell or Deliver Cocaine, the court hereby adjudges you to be guilty of said offense; ... (Emphasis supplied) (HRS Composite Exhibit 2)
8. Since the Petitioner has been convicted of a felony, pursuant to Chapter 893, Florida Statutes, she does not meet the minimum standards of child care personnel and therefore the Department of Health and Rehabilitative Services properly denied her reapplication for licen-sure.”
On January 16, 1986, HRS adopted the hearing officer’s recommended order and denied Mrs. Calhoun’s reapplication for a family day care license. This appeal follows.
II
Mrs. Calhoun’s central position on appeal is that Section 402.305(l)(a)(26), Florida Statutes (1985) is unconstitutional on its face because it, in essence, creates an irre-buttable presumption of amorality based on a prior felony conviction for drug abuse and thereby terminates a valuable property right of Mrs. Calhoun without a meaningful hearing. The statute provides as follows:
“The state minimum standards shall be designed to protect the health, sanitation, safety, and well-being of all children under care by ensuring competent personnel, adequate physical surroundings, and healthful food. All standards established under ss. 402.301-402.319 shall be consistent with rules promulgated by the State Fire Marshal for child care facilities. The minimum standards for child care facilities shall include the following areas:
(1) Personnel. — Minimum standards for child care personnel, which shall include minimum requirements as to:
(a) Good moral character based upon screening. Such minimum standards for screening shall ensure that no child care personnel at a child care facility or other child care program have been found guilty of, regardless of adjudication, or entered a plea of nolo contendere or guilty to, any felony prohibited under any of the following provisions of the Florida Statutes or under a similar statute of another jurisdiction:
[[Image here]]
26. Chapter 893, relating to drug abuse prevention and control, if the offense was a felony or if any other person involved in the offense was a minor.”
Mrs. Calhoun urges that she is morally fit to be licensed as an operator of a family day care center by virtue of her past seven years of exemplary performance as an HRS licensed family day care operator, and that to deprive her of this valuable license based solely on her prior felony convictions, notwithstanding her exemplary record, is a denial of due process under the Fourteenth Amendment to the United States Constitution. We cannot agree for three reasons.
*678 A
First, the state of Florida, plainly, has the constitutional authority to deny basic civil rights — such as the right to vote, to serve on a jury, to hold public office — as well as the right to engage in state-licensed occupations, to a person, like Mrs. Calhoun, who has been previously convicted of a felony. See Page v. Watson, 140 Fla. 536, 192 So. 205, 208 (1989). There is clearly a certain moral unfitness which accompanies a felony conviction, and the state, without question, may rely on this unfitness in denying a convicted felon certain rights and privileges of citizenship. This is particularly true when, as here, the state seeks to disqualify a convicted felon from being licensed to operate a family day care center, as children of tender age in such centers are particularly vulnerable to moral and physical abuse by morally suspect adults. This being so, we think it clear that Section 402.305(l)(a)(26), Florida Statutes (1985), which by its plain terms disqualifies a person, like Mrs. Calhoun, from being licensed as a family day care center operator based on a prior felony conviction for narcotics violations, is facially constitutional. See, e.g., Schanuel v. Anderson, 546 F.Supp. 519 (S.D.Ill.1982), aff'd, 708 F.2d 316 (7th Cir.1983); Dixon v. McMullen, 527 F.Supp. 711 (N.D.Tex.1981); Gallie v. Wainwright, 362 So.2d 936 (Fla.1978); Nelson v. State, 195 So.2d 853 (Fla.1967); see also § 944.292, Fla.Stat. (1985).
B
Second, the presumption of moral unfitness based on a prior felony conviction for narcotics violations under the above statute is not, as urged, an irrebuttable presumption so as to forever bar Mrs. Calhoun from being licensed as a family day care operator in Florida regardless of proof of rehabilitation. Section 112.011(l)(b), Florida Statutes (1985), specifically provides:
“(b) A person whose civil rights have been restored shall not be disqualified to practice, pursue, or engage in any occupation, trade, vocation, profession, or business for which a license, permit, or certificate is required to be issued by the state, any of its agencies or political subdivisions, or any municipality solely because of a prior conviction for a crime. However, a person who has had his civil rights restored may be denied a license, permit, or certification to pursue, practice, or engage in an occupation, trade, vocation, profession, or business by reason of the prior conviction for a crime if the crime was a felony or first degree misdemeanor and directly related to the specific occupation, trade, vocation, profession, or business for which the license, permit, or certificate is sought.” (emphasis added).
It follows, then, that Mrs. Calhoun, upon proof of her rehabilitation — and we acknowledge her exemplary record as a child day care operator for the years 1978-1985 —may apply for a restoration of her civil rights through a pardon or otherwise,[1] and, upon such restoration, will no longer be disqualified, as she is now, from being licensed as a family day care operator. We recognize, of course, that HRS could still, in its discretion, decline to issue such a license to Mrs. Calhoun based on her prior felony convictions, even if her civil rights are restored, if it determines that she has not been fully rehabilitated, see Page v. Watson, 140 Fla. 536, 192 So. 205 (1939). Still, HRS is, plainly, free to issue her such a license, under Section 112.011(l)(b), Florida Statutes (1985), upon the restoration of *679 her civil rights, notwithstanding her prior felony conviction, if it concludes she has been rehabilitated — and, consequently, it cannot be said, as urged, that an irrebutta-ble presumption of moral unfitness has been imposed by Section 402.305(l)(a)(26), Florida Statutes (1985), so as to preclude Mrs. Calhoun from ever re-acquiring her day care license upon sufficient proof of rehabilitation. Consequently, the gravamen of Mrs. Calhoun’s due process attack on the above statute must fall.
C
Third, we find inapplicable to this case the line of Fourteenth Amendment due process cases relied on by Mrs. Calhoun involving employment license denials, because none of these cases deal with disqualifying a convicted felon from being able to work in certain state-licensed occupations.[2] We think special considerations are necessarily present in dealing with persons who have prior felony records because of the presumptive moral unfitness to exercise the normal rights and privileges of American citizenship which attends most, if not all, felony convictions. The cases relied on by Mrs. Calhoun do not involve such considerations, and, consequently, cannot control our decision here.
Ill
For the above-stated reasons, the final order under review is, in all respects,
Affirmed.

. Article IV, Section 8, of the Florida Constitution provides in relevant part:
"[T]he governor may ... with the approval of three members of the cabinet, grant full or conditional pardons, restore civil rights, commute punishment, and remit fines and forfeitures for offenses.”
Section 940.05, Florida Statutes (1985), provides in relevant part:
"Any person who has been convicted of a felony may be entitled to the restoration of all the rights of citizenship enjoyed by him prior to his conviction if he has:
(1) Received a full pardon by the board of pardons....”

. See, e.g., Barry v. Barchi, 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); Cleveland Board of Education v. La Fleur, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); see also Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971).