340 So.2d 966 (1976)
STATE of Florida, Petitioner,
v.
George D. NOURSE, Respondent.
No. 76-786.
District Court of Appeal of Florida, Third District.
December 20, 1976.
*967 Richard E. Gerstein, State's Atty., and George Volsky, Asst. State Atty., for petitioner.
Jose Manuel Quignon, Jr., Miami, for respondent.
Before BARKDULL, C.J., and PEARSON and HAVERFIELD, JJ.
BARKDULL, Chief Judge.
By this petition for writ of certiorari, the State of Florida seeks review of an order of the circuit court [sitting in its appellate capacity] reversing the appellee's convictions and sentences entered pursuant to a trial court's finding that the respondent was guilty of violating §§ 370.14(2)(a)(1), 370.14(4), Fla. Stat. [possession of undersized crawfish and possession of crawfish during the closed season].
On July 29, 1975, two days before opening of the crawfish season, the respondent [a commercial fisherman] was aboard his boat in Biscayne Bay. A marine patrol officer boarded the respondent's boat and seized eleven crawfish, nine of which were undersized. As a result thereof, respondent was charged with violation of §§ 370.14(2)(a)(1) and 370.14(4), Fla. Stat. He pleaded not guilty and the cause proceeded to non-jury trial in the county court. At trial, the respondent attempted to establish that, in fact, he was lawfully setting out his traps pursuant to § 370.14(3)(a)(2)(a), Fla. Stat., and that the crawfish were being *968 used as bait. The trial court found the respondent guilty as charged and fined him $50.00 on each charge. Timely appeal was taken to the circuit court which, after hearing thereon, found that there was a conflict between § 370.14(3)(a)(2)(a) and §§ 370.14(2)(a)(1), 370.14(4), Fla. Stat., and that inasmuch as the prior statute was specific in nature it would control over the latter general provision. Therefore, the circuit court reasoned that as the respondent was using the crawfish as bait he could not be guilty of violation of §§ 370.14(2)(a)(1) and 370.14(4), Fla. Stat. Based on this reasoning, the circuit court reversed the trial court. This petition for writ of certiorari followed.
The petitioner contends that the circuit court departed from the essential requirements of law in construing § 370.14, Fla. Stat. contrary to the explicit legislative intent, and in reversing the trial court's convictions with respect to the charge of Possession of Undersized Crawfish. The State contends that § 370.14(2)(a)(1), Fla. Stat., is controlling:
"No person, firm or corporation shall take or have in his possession at any time regardless of where taken, any salt water crawfish * * * unless such salt water crawfish * * * shall have a carapace measurement of more than three inches or shall have a tail measurement of more than five and one-half inches, not including any protruding muscle tissue." [emphasis added]
This statute makes it clear that possession of undersized crawfish, at any time, is unlawful.
In regard to the charge of Possession of Crawfish during the Closed Season, the petitioner contends § 370.14(4) is relevant:
"Closed season.  No person, firm, or corporation shall take or have in his possession, regardless of where taken, any saltwater crawfish * * * between March 31 and August 1 of each year, except by special permit, and as provided by Section 370.141, for storage and distribution of inventory stocks." [emphasis added]
In the same way that § 370.14(2)(a)(1), Fla. Stat., clearly prohibits possession of undersized crawfish, § 370.14(4), Fla. Stat. prohibits possession of any saltwater crawfish during the closed season, unless a special permit is obtained.
In spite of the unequivocal language of §§ 370.14(2)(a)(1), 370.14(4), the circuit court held that § 370.14(3)(a)(2)(a), Fla. Stat., controlled over the two previously cited statutes. § 370.14(3)(a)(2)(a), Fla. Stat., provides in part:
* * * * * *
"* * * Traps may be placed in the water and baited ten days prior to the opening of the crawfish season, and shall be removed within five days after the close of the crawfish season; provided, however, nothing herein shall authorize the landing or sale of any crawfish during the closed season." [emphasis added]
The legislative intent in the crawfish regulation statutes is explicit in § 370.14(1), Fla. Stat.:
"Intent.  It is the intent of the legislature to maintain the crawfish industry for the economy of the state and to conserve the stocks supplying this industry. The provisions of this act regulating the taking of saltwater crawfish are for the purposes of insuring and maintaining the highest possible production of saltwater crawfish."
All of the above-cited statutes relating to crawfish regulation were passed at the same session of the Legislature, and should be read in pari materia in such a manner as to harmonize them and, at the same time, to give effect to the legislative intent. See: Singleton v. Larson, 46 So.2d 186 (Fla. 1950); Mann v. Goodyear, 300 So.2d 666 (Fla. 1974). When the statutes in this cause are read as a whole, the inescapable conclusion is that the word "baited", as used in § 370.14(3)(a)(2)(a), Fla. Stat., cannot include crawfish, either undersize or legal size.
The appellee urges that the Legislature created an exception to the prohibition against possession of undersized crawfish for the ten-day period immediately prior to *969 the opening of the season, and it is his contention that the word "baited" merits the use of undersized crawfish during this limited period. This appears to be absurd reasoning; that for 355 days a year the appellee concedes he could not have in his possession undersized crawfish but for ten days a year it would be permitted. This would defeat the overall intent of Ch. 370.14, Fla. Stat.
It is further noted that the appellee urges that § 370.14(3)(a)(2)(a), Fla. Stat., relating to the right to bait traps ten days before the opening of the season, is an exception to the general prohibition contained in §§ 370.14(2)(a)(1), 370.14(4), Fla. Stat. Being an exception to a general prohibition, any such statutory provision is normally construed strictly against the one who attempts to take advantage of the exception. See: United States v. Allen, 163 U.S. 499, 16 S.Ct. 1071, 41 L.Ed. 242 (1896); 73 Am.Jur.2d, Statutes, § 313. And, unless the right to the exception is clearly apparent in the statute, no benefits thereunder will be permitted. Cella Commission Co. v. Bohlinger, 147 F. 419 (8th Cir.1906); State v. Heard, 246 Miss. 774, 151 So.2d 417 (1963); 73 Am.Jur.2d, Statutes, § 314. Any ambiguity in an exception statute is normally construed in a manner that restricts the use of the exception. State v. Department of City Civil Service, 215 La. 1007, 42 So.2d 65 (1949); State v. Christensen, 18 Wash.2d 7, 137 P.2d 512 (1943); 73 Am.Jur.2d, Statutes, § 313.
Therefore, for the reasons above stated, the decision under review be and the same is hereby quashed, and the matter is returned to the circuit court with directions to affirm the convictions in the county Court.