The Honorable Bill Grant Senator District Five 224 Senate Office Building Tallahassee, Florida 32301
Dear Senator Grant:
This is in response to your request for an opinion on substantially the following question:
 WHAT IS THE LEGAL EFFECT OF A PARDON WITH RESPECT TO THE MINIMUM STANDARDS AS TO GOOD MORAL CHARACTER FOR PERSONS IN POSITIONS SUBJECT TO SCREENING PURSUANT TO CH. 85-54, LAWS OF FLORIDA?
Your inquiry states that you are contemplating filing legislation if a full pardon is insufficient to overcome the minimum standards for persons in positions subject to screening under various provisions of Ch. 85-54, Laws of Florida, as codified in Florida Statutes and administered by the Department of Health and Rehabilitative Services. Officials of the department have advised you that it is their opinion that an individual convicted of a felony prohibited under those provisions of the Florida Statutes enumerated at s. 393.0655(1), F.S., would be disqualified from serving as a "caretaker" at a facility regulated by the department under Ch. 393, F.S., relating to day facilities or residential facilities for persons with developmental disabilities, and that such disqualification would be unaffected by a full pardon bestowed by the Governor with the approval of three Cabinet members pursuant to s. 8(a), Art. IV, State Const. And see, ss.110.1127(3)(a)1. (standards for disqualification for positions in programs of the Department of Health and Rehabilitative Services providing care to children for 15 hours or more per week),394.457(6)(a) (minimum standards for mental health personnel), 396.0425(1) (minimum standards for alcoholism treatment resource personnel), 397.0715(1) (minimum standards for drug dependency treatment resource personnel), 402.305(1)(a) (minimum standards for child care personnel), and 409.175(4)(a)5., F.S. (screening requirements for personnel at a child-placing agency, family foster home, residential child-caring agency, or summer or recreation camp providing 24-hour care for children).
All of the above-enumerated statutory sections are derived from provisions of Ch. 85-54, supra, and all specify in essentially the same manner that screening of such personnel for "good moral character" shall ensure that no personnel in such positions "have been found guilty of, regardless of adjudication, or entered a plea of nolo contendere or guilty to, any felony prohibited under any of the following provisions of the Florida Statutes or under similar statutes of other jurisdictions: . . . ." The above statutes list some 26 offenses as to which a finding of guilt or a plea of nolo contendere or guilty thereto operates to disqualify persons from positions subject to screening. You state in your inquiry that, as Ch. 85-54, supra, has been construed and applied to persons who have received pardons, you "feel we have unfairly singled out some people who have long ago proven their complete rehabilitation and have been a credit to the social services system for many years," and accordingly ask whether this office concurs in the opinion you have received from the Department of Health and Rehabilitative Services.
The intent of the Legislature as gleaned from the statute is the law. Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc., 434 So.2d 879 (Fla. 1983); State v. Williams, 343 So.2d 35
(Fla. 1977). Legislative intent is determined from the plain meaning of statutory language. St. Petersburg Bank Trust Co. v. Hamm, 414 So.2d 1071 (Fla. 1982); Thayer v. State, 335 So.2d 815
(Fla. 1976). It is apparent from those provisions of Ch. 85-54, Laws of Florida, listing offenses as to which a finding of guilt, or a plea of nolo contendere or guilty thereto, operates to disqualify persons from positions subject to screening pursuant thereto, that such provisions represent a legislative judgment that such finding or plea is indicative of a lack of the "good moral character" legislatively deemed essential to such positions. However, the Legislature also recognized that in certain situations the granting of an exemption from the operation of such provisions by the Department of Health and Rehabilitative Services or by a local licensing agency may be justified. Each of the sections cited above (except s. 402.305[1][a], F.S., authorizing the department or a local licensing agency to grant an exemption) provides:
 For misdemeanors prohibited under any of the foregoing Florida Statutes or under similar statutes of other jurisdictions or for judicial determinations of abuse, substantiated indicated reports of abuse, or commissions of domestic violence used for disqualification of a person from working with children, the department may grant an exemption from such a disqualification if the department has clear and convincing evidence to support a reasonable belief that the person is of good character as to justify an exemption.
It is the rule in Florida that the express mention of certain things in a statute implies the exclusion of things not mentioned — expressio unius est exclusio alterius. See, Orr v. Trask, 464 So.2d 131 (Fla. 1985); Thayer v. State, supra; Dobbs v. Sea Isle Hotel, 56 So.2d 341 (Fla. 1952); Ideal Farms Drainage Dist. v. Certain Lands, 19 So.2d 234 (Fla. 1944). This maxim also applies to a statute which expressly enumerates exceptions to, or authorizes exemptions from, its operation, such that the enumeration of such exceptions or exclusions from the statute's operation indicates that the statute applies to all cases not specifically excluded. See, Biddle v. State Beverage Department,187 So.2d 65 (4 D.C.A. Fla., 1966); and State Road Department v. Levato, 192 So.2d 35 (4 D.C.A. Fla., 1966), cert. discharged,199 So.2d 714 (Fla. 1967) (express exceptions in statute provide strong inference that no other exceptions were intended); and see, State v. Nourse, 340 So.2d 966 (3 D.C.A. Fla., 1976); Coe v. Broward County, 327 So.2d 69 (4 D.C.A. Fla., 1976), aff'd., 341 So.2d 762
(Fla. 1976); and Farrey v. Bettendorf, 96 So.2d 889 (Fla. 1957) (exceptions or provisos in statutes are to be strictly construed). Thus, in the absence of express authorization to the Department of Health and Rehabilitative Services to grant an exemption from the operation of the cited statutory provisions for persons found guilty of, or entering a plea of nolo contendere or guilty to, the enumerated felony offenses where such persons have received a full pardon, I am unable to conclude that such persons may be exempted by the department from the operation of such provisions.
Nor can I conclude that the legal effect of a pardon operates to permit the Department of Health and Rehabilitative Services to exempt persons who have been pardoned from the disqualifying effect of the cited statutory provisions or otherwise operates to except such persons from such provisions. Early Florida decisions suggested that a full pardon "remits the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense" and that a pardon "gives to the person in whose favor it is granted a new character, and makes of him a new man." See, respectively, Advisory Opinion to Governor, Opinion of Justices, 14 Fla. 318,319 (1872) (quoting from and adopting for state purposes Ex Parte Garland, 4 Wall [71 U.S.] 333, 380 [1866] and Singleton v. State,21 So. 21, 22 (Fla. 1896). However, the Florida Supreme Court in Page v. Watson, 192 So. 205 (Fla. 1938), after quoting the cited language of the earlier cases, nevertheless held that a full pardon did not prohibit a state board from considering a conviction for such pardoned offense when a statute enacted pursuant to the Legislature's police power required "moral qualifications" for holding a license to practice medicine. The Court on rehearing found no evidence of legislative intent "to eliminate entirely the absence of good moral character as a ground for revoking a license to practice medicine" and concluded that "the felonies of which petitioner was convicted involved moral turpitude and affect his character and qualities as a practitioner of medicine, even though his rights of citizenship have been restored by a full pardon." 192 So. at 211. See also, United States v. Matassini, 565 F.2d 1297 (5th Cir. 1978), containing a comprehensive discussion of Florida case law as to the legal effect of a pardon and noting that under Florida law the effect of a pardon is to erase a conviction for all purposes, "save possibly occupational qualification and licensing." Cf., s. 112.011(1)(b), F.S.; AGO 73-355 (persons whose civil rights are restored not disqualified to practice, pursue or engage in occupation, trade, vocation, profession, or business for which state license is required unless prior conviction was for crime "directly related" to specific occupation or employment position for which license is sought). Accordingly, I am of the opinion that under present case law in Florida the legal effect of a pardon does not operate to authorize an exemption for persons who have received a pardon or otherwise except such persons from the operative effect of the statutory provisions cited herein, at least to the extent that such provisions evince a legislative intent that persons found guilty of, or entering a plea of nolo contendere or guilty to, the specified offenses lack the good moral character legislatively deemed essential to positions subject to screening pursuant thereto.
Finally, with respect to your legislative duties, it should be noted that, to the extent that you state that you contemplate filing legislation to strengthen the statute governing executive clemency to address the subject of persons who have received a pardon for otherwise disqualifying offenses pursuant to Ch. 85-54, Laws of Florida, "[n]o aspect of clemency powers exists by virtue of a legislative enactment, and none could. These powers are `derived' solely from the Constitution." In re Advisory Opinion of the Governor, 334 So.2d 561, 562 (Fla. 1976). See, Rules of Executive Clemency, Ch. 27 Appen., F.A.C., implementing power vested in the Governor by s. 8(a), Art. IV, State Const. Rule 5(a) provides in pertinent part that a full pardon "absolves the offender from all legal consequences of the conviction of an offense under Florida Law." However, in the absence of any judicial determination applying this rule in the context of your inquiry and in view of the evident legislative intent expressed in the cited statutory provisions enacted by various sections of Ch. 85-54, supra, I am unable to conclude that Rule 5(a), Rules of Executive Clemency, operates to remove the disqualification imposed by such statutory provisions or to permit the Department of Health and Rehabilitative Services to grant an exemption from the operation of the law. Moreover, in the absence of express authorization in such statutory provisions enacted by Ch. 85-54 for the Department of Health and Rehabilitative Services to grant exemptions to persons who receive pardons for specified felony offenses, it would appear doubtful that any legislative changes in statutes relating to executive clemency would operate to furnish the department with such authority. See, State ex rel. Greenberg v. Florida State Board of Dentistry, 297 So.2d 628 (1 D.C.A. Fla., 1974), cert. denied, 300 So.2d 900 (Fla. 1974) (administrative agencies limited to authority and powers granted by statute); and Kirk v. Publix Super Markets, 185 So.2d 161 (Fla. 1966) (statutory direction providing that administrative power shall be exercised in certain way precludes doing it in another way).
Therefore, unless and until legislatively clarified or judicially determined otherwise, it is my opinion that a pardon does not affect legislatively established minimum standards as to good moral character for persons in positions subject to screening pursuant to Ch. 85-54, Laws of Florida, nor does the legal effect of a pardon operate to authorize the Department of Health and Rehabilitative Services to grant an exemption from the operation of the law.
Sincerely,
Jim Smith Attorney General
Prepared by:
Kent L. Weissinger Assistant Attorney General