The Honorable Gaylen Jungling Acting Secretary Department of Health and Rehabilitative Services 1317 Winewood Boulevard Tallahassee, Florida 32301
Dear Secretary Jungling:
This is in response to your predecessor's request for an opinion on the following question:
 DOES THE DEPARTMENT OF HEALTH AND REHABILITATIVE SERVICES HAVE ACCESS TO SCHOOL RECORDS WHEN CONDUCTING AN INVESTIGATION OF CHILD ABUSE OR WHEN CONDUCTING A DEPENDENCY OR DELINQUENCY INVESTIGATION?
The Department of Health and Rehabilitative Services is the lead agency in providing comprehensive protective services for abused or neglected children in the State of Florida. See generally, ss. 415.502-415.514, F.S. Section 415.505, F.S., as amended by s. 1, Ch. 86-176, Laws of Florida, requires the department to be capable of receiving and investigating reports of known or suspected child abuse or neglect 24 hours a day, 7 days a week. Section 415.504, F.S., as amended by s. 68, Ch. 86-163, Laws of Florida, requires persons, including school teachers or other school officials or personnel, who know, or have reasonable cause to suspect, that a child is abused or neglected to report such knowledge or suspicion to the department as provided therein.
Subsection (1)(b) of s. 415.505 sets forth the requirements of the department's onsite child protective investigation. These requirements include the need to determine the immediate and long-term risk to each child if the child remains in the existing home environment. Section 415.505 goes on to provide the procedures for the investigation and disposition of a report of child abuse or neglect. Section 415.506, F.S., gives a law enforcement officer or authorized agent of the department the authority to take a child into custody as provided in Ch. 39, F.S.
Chapter 39, F.S., is the Florida Juvenile Justice Act. Part II and Part III of the act deal with delinquency and dependency cases, respectively. Concerning child abuse, s. 39.401(1)(b), F.S., authorizes a law enforcement officer, or an authorized agent of the department, to take a child into custody, if the officer or agent has reasonable grounds to believe that the child has been abandoned, abused, or neglected, is suffering from illness or injury, or is in immediate danger from his surroundings and that his removal is necessary to protect the child.
Neither Ch. 39, F.S., nor ss. 415.502-415.514, F.S., authorize the department to examine confidential student records. Access to student records is controlled by s. 228.093, F.S., which, in pertinent part of subsection (3)(d), states:
 Right of privacy. — Every pupil or student shall have a right of privacy with respect to the educational records kept on him. No state or local educational agency, board, public school, area vocational-technical center, community college, or institution of higher education in the State University System shall permit the release of personally identifiable records or reports of a pupil or student, or of any personal information contained therein, without the written consent of the pupil's or student's parent or guardian, or of the pupil or student himself if he is qualified as provided in this subsection. . . .
Section 119.07(3)(b), F.S., exempts those public records referred to in s. 228.093 from the disclosure and inspection requirements of s. 119.07(1). Section 228.093(2)(e), F.S., defines records to mean any and all official records, files and data directly related to pupils and students which are created, maintained and used by public educational institutions. Excluded from this definition of records is directory information not pertinent herein. Access to information falling within the definition of student "records" is limited to certain enumerated individuals and agencies. See, subsection (3)(d) of s. 228.093. The Department of Health and Rehabilitative Services is not among the enumerated agencies to whom public educational institutions are authorized to disclose confidential student records.
You state that it is the department's position that because of the nature of child abuse investigations and the overwhelming public interest in protection of children, the department should be deemed to have access to such student records. Access to student records has been the issue involved in a number of Attorney General Opinions and at least one pertinent judicial decision. In Human Rights Advocacy Committee v. Lee County School Board,457 So.2d 522 (2 D.C.A.Fla., 1984), the district court of appeal reviewed a circuit court's denial of a petition by a district human rights advocacy committee for access to confidential school records in the custody of a district school board. The committee was an entity created under s. 20.19(7), F.S. (1982 Supp.), charged with receiving, investigating, and resolving "reports of abuse or deprivation of constitutional and human rights within the area of jurisdiction of the committee." The district court construed the language of s. 20.19(7)(g) in conjunction with s. 228.093 to reach the conclusion that the committee was not entitled to access to the confidential school records of the students. Specifically reviewing s. 228.093 in light of the committee's duties and responsibilities the court at 525 stated: "In the absence of specific language giving the committee access to confidential public school records, we are unwilling to usurp the legislative function by creating a judicially prescribed exception to the protection afforded by the statute."
During the 1984 Legislative Session, Ch. 84-226, Laws of Florida, was enacted, which amended s. 20.19(7)(g)2., F.S. 1983, to provide, in pertinent part, for access by a district human rights advocacy committee for investigative purposes "to all client files, reports, and records, including those from all other agencies and departments of government, except matters under investigation by law enforcement authorities or judicial authorities. . . ." Section 17, Ch. 84-226, Laws of Florida. Based upon these and other legislative changes, this office was of the view that a district human rights advocacy committee is entitled to access to client files, reports, and records in the custody of the Department of Health and Rehabilitative Services for purposes of committee investigations of reports of institutional child abuse or neglect in which a client of the department is alleged or shown to have been abused or neglected. See, AGO 87-8.
In AGO 81-78 this office concluded that the provisions of s. 228.093 prohibited the release by public schools of the lists of daily truants to law enforcement agencies without the written consent of the pupil's or student's parent or guardian or of the student or pupil if he or she is qualified. In AGO 81-8, this office considered the provisions of s. 228.093 restricting the release of information contained in a student's or pupil's records and concluded that the statute prohibited state educational officers from releasing a student's social security number to the Auditor General for use in performing a proper audit of the state educational agencies without the consent of the student's parent or guardian or the student if he or she is qualified. Section 228.093 was amended by the 1981 Legislature to permit the release of such information to the Auditor General in connection with his official functions. See, s. 1, Ch. 81-201, Laws of Florida.
Therefore, based upon the foregoing it appears that, under ordinary circumstances, s. 228.093, F.S., as amended, does not permit the department to have access to confidential student records since the department is not among those persons or agencies enumerated in the statute authorized to have access to confidential student records. As you point out, however, s. 228.093(3)(d)8. permits release of student records to:
 Appropriate parties in connection with an emergency, if knowledge of the information in the pupil's or student's educational records is necessary to protect the health or safety of the pupil, student, or other individuals.
The provisions of s. 228.093, F.S., provides no definition of the word "emergency." However, the confidentiality and release of student records is also regulated by federal law for state educational programs receiving federal funds. See,20 U.S.C. § 1232g(6)(1), which provides that no funds shall be made available under any applicable program to any educational agency or institution which has a policy or practice of permitting the release of educational records or personally identifiable information contained in such records, other than directory information, of students without the written consent of their parents to any individual, agency, or organization except as provided therein. Section 1232g(6)(1)(I) provides that release of student records can be made "subject to regulations of the Secretary, in connection with an emergency, [to] appropriate persons if the knowledge of such information is necessary to protect the health or safety of the student or other persons." Tracking this federal statutory language, 34 C.F.R. § 99.31(a)(10) permits disclosure to appropriate parties in a health or safety emergency subject to the conditions set forth in s. 99.36. This latter federal regulation provides:
 (a) An educational agency or institution may disclose personally identifiable information from the education records of a student to appropriate parties in connection with an emergency if knowledge of the information is necessary to protect the health or safety of the student or other individuals.
 (b) The factors to be taken into account in determining whether personally identifiable information from the education records of a student may be disclosed under this section shall include the following:
 (1) The seriousness of the threat to the health or safety of the student or other individuals;
(2) The need for the information to meet the emergency;
 (3) Whether the parties to whom the information is disclosed are in a position to deal with the emergency; and
 (4) The extent to which time is of the essence in dealing with the emergency.
 (c) Paragraph (a) of this section shall be strictly construed.
Section 228.093, F.S., was enacted into law by Ch. 77-60, Laws of Florida. At the Senate Education Committee Meeting on April 8, 1977, which considered Senate Bill 359 (subsequently codified as s. 228.093) the bill's sponsor stated that the purpose of the proposed law relating to the confidentiality and release of student records was to bring state law into compliance with federal requirements (tape on file at Florida State Archives). The determination of what constitutes an emergency which would necessitate the release of student records to the department involves mixed questions of law and fact which this office cannot make and must be made on a case-by-case basis applying the above-cited statutory and regulatory provisions by district school personnel vested with the responsibility to make such decisions.
Section 1, Ch. 86-65, Laws of Florida, added new subparagraphs to s. 228.093(3)(d), F.S., to provide in relevant part:
 10. A court of competent jurisdiction in compliance with an order of that court or the attorney of record pursuant to a lawfully issued subpoena, upon the condition that the pupil or student and his parent are notified of the order or subpoena in advance of compliance therewith by the educational institution or agency.
You further query whether the language "attorney of record" implies there must be an ongoing judicial proceeding. Applying the legislative intent as expressed by the language used by the Legislature in the amendatory act, I am of the opinion that there must be an ongoing judicial proceeding in order for an attorney of the department to properly subpoena student records under this new exception to the confidentiality requirements of s. 228.093, F.S.
While the term "attorney of record" is not expressly defined by the Legislature in the new exception, its meaning is determined by the context and where words of common usage are not specifically defined, they are given their plain and ordinary meaning. Southeastern Fisheries Association, Inc. v. Department of Natural Resources, 453 So.2d 1351 (Fla. 1984); Citizens of State v. Public Service Commission, 425 So.2d 534 (Fla. 1982). The term "attorney of record" is defined by Black's Law Dictionary 164 (Rev. 4th ed. 1968) as the "[a]ttorney whose name must appear somewhere in permanent records or files of [the] case, or on the pleadings or some instrument filed in the case, or on appearance docket." Thus, it would appear that the sine qua non of the term "attorney of record" is that there is an ongoing judicial proceeding. This conclusion is bolstered by the legislative staff analysis and remarks made by legislators during committee meetings to consider the amendatory bill. See generally, Bill file, SB 73, 1986 Legislative Session, Senate Committee on Education; legislative remarks, Committee Meeting of April 9, 1986 (tape on file with the committee). Furthermore, this conclusion is consistent with the established principle that exceptions in statutes are to be strictly construed in a manner restricting the use of such exceptions. Farrey v. Bettendorf, 96 So.2d 889 (Fla. 1957); State v. Nourse, 340 So.2d 966 (3 D.C.A. Fla., 1976).
In conclusion, I am of the opinion that, unless and until legislatively amended otherwise, s. 228.093, F.S., as amended by Chs. 86-65, 86-145 and 86-163, Laws of Florida, does not permit the release of confidential student records to the Department of Health and Rehabilitative Services except in connection with an emergency where the information in the student's records is necessary to protect the health or safety of the student or other individuals, or pursuant to a court order or a lawfully issued subpoena to the attorney of record in an ongoing judicial proceeding.
Sincerely,
Robert A. Butterworth Attorney General
Prepared by:
Craig Willis Assistant Attorney General