# Third District Court of Appeal

## State of Florida

Opinion filed February 13, 2019.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-1569
Lower Tribunal No. 17-10537
_____

## Ultra Aviation Services, Inc.,
Appellant,

vs.

## Lisvan L. Cruz Clemente and Miami-Dade County,
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Rodney Smith, Judge.

Holland & Knight LLP, and Miguel De Grandy, and Daniel P. Hanlon, for appellant.

Fairlaw Firm, and Brian H. Pollock; Friedman, Rodman & Frank, P.A., and Elizabeth Estrada and Ronald D. Rodman; Beckham & Beckham, P.A. and Pamela Beckham, for appellee Lisvan L. Cruz Clemente.

Abigail Price-Williams, Miami-Dade County Attorney, and David M. Murray, Cynji A. Lee, and Altanese Phenelus, Assistant County Attorneys, for appellee Miami-Dade County.

Before EMAS, C.J., and SALTER and HENDON, JJ.

HENDON, J.

Ultra Aviation Services, Inc. ["Ultra"] appeals from the circuit court's order granting Miami-Dade County's motion for summary judgment on Counts I and II of the County's third-party complaint, and denying Ultra's motion for summary judgment.[1]  We reverse.

Ultra is a Florida corporation that provides a variety of general aeronautical and passenger services to private air carriers operating at Miami International Airport ["MIA"], which is property of Miami-Dade County [the "County"]. Lizvan Cruz Clemente ["Cruz"] was a part-time employee of Ultra.  In the underlying proceedings, Cruz brought suit against Ultra alleging that Ultra had unlawfully retaliated against him by reducing his hours and threatening him with termination after he complained to Ultra and the County that Ultra purportedly violated the County's Living Wage Ordinance ["LWO"], codified in section 2-8.9 of the Miami-Dade Code of Ordinances.[2] After Ultra moved to dismiss Cruz's

---

[1] The circuit court ultimately also entered a final judgment in favor of Miami-Dade County. We denied Cruz's motion to dismiss Ultra's appeal as premature. <u>Ultra Aviation Servs, Inc. v. Clemente</u>, -- So. 3d --, 43 Fla. L. Weekly D2705 (Fla. 3d DCA Dec. 5, 2018) ("Because the trial court's order disposes of all claims involving
the County, we have jurisdiction to review the partial final judgment pursuant to rule
9.110(k).").

[2] The LWO mandates that contractors and subcontractors of County service contracts should pay their employees nothing less than minimum wage.  Under the LWO, a covered employer has two options regarding the wages it pays employees. It can either (1) decline to provide health insurance but pay a higher wage, or (2) it

complaint on the grounds that the LWO was preempted by section 218.077, Florida Statutes (2015), and the LWO's health plan requirements were no longer valid, the County was allowed to intervene as an indispensable party to enforce the LWO against Ultra. The County asserted four causes of action in its third-party complaint against Ultra; the only two counts that concern this appeal are Counts I and II. Specifically, the County asked the trial court to declare that the LWO was not preempted by section 218.077, and that the Florida Legislature's repeal of section 627.6699(12)(a) did not invalidate the health plan requirements under the LWO. Ultra and the County filed cross-motions for summary judgment as to these counts, and the trial court granted summary judgment to the County.

**STANDARD OF REVIEW**

The trial court's final summary judgment is based on interpretation of section 218.077 and the LWO, and thus our standard of review is de novo. BellSouth Telecomms., Inc. v. Meeks, 863 So. 2d 287, 289 (Fla. 2003) ("Statutory interpretation is a question of law subject to *de novo* review."); Major League Baseball v. Morsani, 790 So. 2d 1071, 1074 (Fla. 2001) (the "standard of review governing a trial court's ruling on a motion for summary judgment posing a pure

---

can provide health insurance and pay a lower hourly wage, provided that the health insurance plan meets certain statutory requirements under section 627.6699(12)(a), Florida Statutes. According to Cruz's complaint, Ultra began to provide its part-time employees with health insurance that did not comply with the LWO.

3

question of law is de novo."); see also Volusia Cty. v. Aberdeen at Ormond Beach, L.P., 760 So. 2d 126, 130 (Fla. 2000).

**ANALYSIS**

Ultra is identified by the County as a General Aeronautical Services Permittee ["GASP"]. The County provides GASPs such as Ultra with a non-exclusive right to access MIA to conduct company business in exchange for a fee in the amount of 7% of its monthly gross revenues derived from Ultra's provision of services to private airlines at MIA. Ultra's provision of services to the private airlines are governed by separate service contracts with those airlines, contracts to which the County is not a party or third party beneficiary.

Ultra's February 2016 permit agreement with the County contains a provision requiring Ultra to abide by the LWO. There is no dispute that Ultra is a GASP as defined by subsection 2-8.9(E)(3) of the LWO. [3] Ultra argues, however,

---

[3] The operative provision of the County LWO for County service contracts and County employees, section 2-8.9(E), provides the definition of a service contractor:

(E) Service contractor is any individual, business entity, corporation (whether for profit or not for profit), partnership, limited liability company, joint venture, or similar business that is conducting business in Miami-Dade County or any immediately adjoining county and meets the following criteria:
(1) The service contractor is paid in whole or part from one (1) or more of the County's general fund, capital project funds, special revenue funds, or any other funds either directly or indirectly, whether by competitive bid process, informal bids, requests for proposals,

4

and we agree, that section 218.077 prohibits local governments from imposing minimum wage requirements exceeding federal or state minimum wage laws.[4] The statute provides limited exceptions that allow a political subdivision such as the County to impose minimum wage requirements higher than state or federal minimum wage.[5] The County asserts that Ultra falls under section 218.077(3)(a)2.,

---

some form of solicitation, negotiation, or agreement, or any other decision to enter into a contract;

     (2) The service contractor is engaged in the business of, or part of, a contract to provide, a subcontractor to provide, or similarly situated to provide, covered services, either directly or indirectly for the benefit of the County; or

     (3) The service contractor is a General Aeronautical Service Permittee (GASP) or otherwise provides any of the Covered Services as defined herein at any Miami-Dade County Aviation Department facility including Miami International Airport pursuant to a permit, lease agreement or otherwise.

[4] Section 218.077(2) of the Florida Statutes is a preemption statute that expressly prohibits political subdivisions of the state from establishing a minimum wage contrary to state or federal wage requirements. That statute provides, in pertinent part:

(2) Except as otherwise provided in subsection (3), a political subdivision may not establish, mandate, or otherwise require an employer to pay a minimum wage, other than a state or federal minimum wage, to apply a state or federal minimum wage to wages exempt from a state or federal minimum wage, or to provide employment benefits not otherwise required by state or federal law.

Article VIII, section 2(b) of the Florida Constitution authorizes the Florida Legislature to preempt municipal powers. Masone v. City of Aventura, 147 So. 3d 492, 495 (Fla. 2014) ("[M]unicipal ordinances must yield to state statutes.").

[5] Section 218.077, Fla. Stat. (2018) provides,

    (3) This section does not:

5

the statutory exception for "the employees of an employer contracting to provide goods or services for the political subdivision," and therefore allows the County to impose its own minimum wage requirements on Ultra via the permit agreement, free from the general wage prohibition of section 218.077(2). We disagree.

This Court must begin with the actual language used in the statute because legislative intent is determined primarily from the statute's text. See Raymond James Fin. Servs., Inc. v. Phillips, 126 So. 3d 186, 190 (Fla. 2013); see also Gomez v. Vill. of Pinecrest, 41 So. 3d 180, 185 (Fla. 2010). Additionally, an exception to a statutory provision is usually strictly construed against the one who attempts to take advantage of the exception. See State v. Nourse, 340 So. 2d 966, 969 (Fla. 3d DCA. 1976). It is clear from the record on appeal that Ultra is not a provider of "goods or services" to the County pursuant to subsection (3) and its permit agreement with the County. As a permittee, Ultra is allowed to conduct its business on County property for an access fee; Ultra provides its services not to the County, but to private airlines via separate written private contracts with

(a) Limit the authority of a political subdivision to establish a minimum wage other than a state or federal minimum wage or to provide employment benefits not otherwise required under state or federal law:
    1. For the employees of the political subdivision;
    2. For the employees of an employer contracting to provide goods or services for the political subdivision, or for the employees of a subcontractor of such an employer, under the terms of a contract with the political subdivision; . . . (emphasis added).

commercial airlines, contracts to which the County is not a party. To be sure, the GASP permit states that "the rights granted by the Permit are exclusively limited to the Permittee's right and privilege to do business at the Airport." Ultra does not provide either goods or services to the County itself.

In the lower court, the County argued that Ultra is in a class of contractors that provides services to its clients at MIA, that they in essence also provide services "for the benefit of or on behalf of" Miami-Dade County. In support of its position, the County relies upon the definitional provision of section 218.077(1)(c).[6] We acknowledge that the County benefits from Ultra's business in a derivative or collateral sense, in that the provision of services by Ultra to private air carriers at MIA ensures that MIA continues to bring air traffic and related businesses to the area. That is not, however, a direct "provision of goods and services" to the County, and we decline to so hold. If the legislature had intended permit arrangements, such as the one between the County and GASPs, to be exempt from the prohibition of section 218.077, it would have carved out that exception with

---

[6] Section 218.077(1)(c) reads:

(c) "Employer contracting to provide goods or services for the political subdivision" means a person contracting with the political subdivision to provide goods or services to, for the benefit of, or on behalf of, the political subdivision in exchange for valuable consideration, and includes a person leasing or subleasing real property owned by the political subdivision.

7

plain language similar to that included in the County's LWO. See Nourse, 340 So. 2d at 969.

Similarly, we reject the County's contention that Ultra's lease of property at MIA is a sufficient contractual basis for enforcing the LWO against Ultra.[7] The lease does not fall within section 218.077's "under the terms of a contract" exception because that lease contract must be related to provision of goods and services to the County. §218.077(3)(a)2., Fla. Stat. (2018). As we have previously concluded, Ultra does not by contract or otherwise provide "goods or services" to the County in order for that statutory exception to apply.

Because Ultra does not fall within any of section 218.077's provisions, we therefore reverse the order granting final summary judgment on Counts I and II of Miami-Dade County's third party complaint, and remand to enter final summary judgment for Ultra on those counts.

Reversed and remanded.

---

[7] We find the decision in Amerijet International, Inc. v. Miami-Dade County, Fla., 627 F. App'x 744 (11th Cir. 2015), to be inapplicable to the instant facts.